UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL THOMPSON,

        Petitioner,                              Case Number 10-10007
                                                             Honorable David M. Lawson

v.

JEFFREY LARSON,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Darnell Thompson, presently confined at the Central Michigan Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possessing a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. The petitioner was found guilty of these crimes following a bench trial in the Wayne County, Michigan circuit court and was sentenced as a third habitual felony offender to a prison term of thirty-four months to ten years for the felon in possession conviction and a consecutive five-year term for the felony firearm conviction. At the time the petitioner instituted this action, he was confined at the Cooper Street Correctional Facility, where Paul Klee was the warden. Jeffrey Larson is the warden of the Central Michigan Correctional Facility. The Court, therefore, will amend the caption of the case to reflect the name of the petitioner's current custodian.

The petition raises three claims: (1) the trial court violated the petitioner's right to present a defense when it refused to allow him to introduce evidence of his prior consistent statement; (2) the evidence was insufficient to support the petitioner's felony firearm conviction because the

Michigan legislature did not intend for the offense of felon in possession of a firearm to be used as a predicate for the offense of commission of a felony with a firearm; and (3) the sentencing guidelines were scored incorrectly. The respondent filed an answer to the petition arguing that the petitioner's claims were reasonably rejected by the state courts or cannot form the basis of federal relief. The Court finds that none of the petitioner's claims has merit and therefore will deny the petition.

I.

The petitioner's convictions arose from a shooting that occurred in the early morning hours of May 14, 2007. On that date, officers responded to a call about gun shots having been fired in the area of Maitais Bar on East Eight Mile Road in Detroit. When the officers arrived at the bar they were directed to Hickory Street, south of Eight Mile Road, where the alleged shooters had run.

Detroit police officer Howard Sweeney testified that he traveled down Hickory Street with several other officers. While on Hickory street, Sweeney saw officers shining their flashlights on the petitioner in the back yard of a house on Alcoy Street. Sweeney saw the petitioner reach into his waistband and remove a handgun. The petitioner threw the gun to the ground and began running away. Another officer, Jacquelinn Fernandez, testified that she intercepted and arrested the petitioner. Officer Steven Rauser testified that he assisted Fernandez in making the arrest and retrieved the handgun the petitioner had dropped.

Sergeant Craig Hughes testified that the petitioner made a statement at the police station in the evening on the day of his arrest. According to Hughes, the petitioner stated that he and three other people left the parking lot of the bar and walked to their car, which was parked on Alcoy Street. When one of his friends was shot at, the petitioner's nephew drew a handgun and shot back. The petitioner told Officer Hughes that he had obtained the gun one week earlier when a man tried

to rob him. The petitioner said that he and the robber tussled with the gun and it discharged. The petitioner stated that he had given the gun to his nephew, and his nephew brought the gun with him on May 14, 2007. The petitioner stated that after he and his nephew were shot at, the petitioner took the gun from his nephew and fired one shot. The gun was then empty and the petitioner threw it away. The petitioner then stated that after the shooting he ran into the back yard of a nearby house. While he was in the yard, the men that started the shooting confronted him and began beating him. The petitioner said a lady that lived at the house asked what was happening. The petitioner said he responded that he was being robbed. Officer Sweeney testified that the petitioner refused to sign the statement.

Theresa Lockhart testified for the defense that she was in her home on Alcoy Street when she was awakened by about twenty-five gunshots. Lockhart said she looked out the window but could not determine the source of the gunshots. Lockhart said she tried to lay back down, but she heard noises and voices right outside the window. She went back to the window and yelled out. She saw someone wearing white clothing who said "someone's trying to rob us." Lockhart asked the individual if he wanted her to call the police and he said yes. Lockhart called the police and then went outside to her front porch. Lockhart was speaking with her neighbor when she saw a man wearing a white tee-shirt walking on Alcoy Street. Lockhart was unsure whether that was the same man she spoke with through the window. Lockhart stated that she saw the police shine a light on this man, but the police did nothing to him. Lockhart also saw that the police had arrested a person a few houses away who was also wearing white.

The petitioner testified at trial that he had been at the Maitais bar on the night of his arrest. He said there was a fight inside the bar, during which someone fired a gun. The petitioner and his nephew's girlfriend went outside to the parking lot. The petitioner said there was another gunshot

fired in the parking lot. The petitioner and some other people ran to Hickory Street where they encountered a group of three men. Two of the men pulled out guns and announced a robbery. The petitioner ran away and hid in a nearby yard. After a few minutes, the petitioner saw some other people from the bar and he joined up with them. The people from the bar heard police sirens, so they decided that it was safe to return to the bar.

  The petitioner jumped a fence and entered another yard. He saw a man in the yard and approached him to ask for help. The petitioner offered to give the man money to use the phone. The petitioner said the man smacked him and pushed him to the ground. The petitioner threw some of his money on the ground and the man reached to grab the money with one hand while holding the petitioner with the other hand. The petitioner said one of the men that tried to rob the petitioner on Hickory Street showed up in the yard. The robber grabbed the rest of the petitioner's money and ordered him to hand over his jewelry. The robber then hit the petitioner in the face, took out a gun, and pointed it at the petitioner. The petitioner grabbed the gun and the robber's arm. During this struggle the gun fired several times. The petitioner testified that this is when a woman called out from the house asking what was happening. The petitioner told her that he was being robbed and asked her to call the police. A few moments later the police arrived and shined a light into the yard. The robber wanted to flee, but the petitioner was still holding onto the gun. The robber began hitting the petitioner. When the police turned off the light the robber fled, but the petitioner stayed. The petitioner said he began looking on the ground for a chain that he was wearing. When he looked up there was a police officer standing near him. The petitioner told the officer that two men had tried to rob him and had just run away. The officer then arrested the petitioner.

  The trial judge convicted the petitioner of the two firearm offenses. After sentencing, the petitioner filed a direct appeal. His appointed counsel filed an appellate brief that raised the same

three claims that are presented in this petition. The petitioner also raised a fourth claim in a *pro se* supplemental brief. That claim is not presented in the habeas petition. The Michigan Court of Appeals affirmed the petitioner's convictions and sentences. *People v. Thompson*, No. 281199, 2009 WL 387735 (Mich. Ct. App. Feb. 17, 2009). The Michigan Supreme Court denied leave to appeal. *People v. Thompson*, 483 Mich. 1114, 766 N.W.2d 834 (2009).

The petitioner seeks a writ of habeas corpus on the following grounds:

I. Where the prosecution claimed that Darnell Thompson's defense — that he was not a gunman but a robbery victim — was a trial-time concoction, Judge Brown erred by refusing to allow Mr. Thompson to elicit proof that he had been robbed [denying him] the constitutional rights to confront the witnesses against him and present a defense.

II. The evidence was insufficient to support the felony-firearm conviction, because the legislature did not intend felon-in-possession to be used as the basis of a felony-firearm conviction.

III. Petitioner must be resentenced because both guidelines offense variables were misscored.

Pet. at i. The respondent filed an answer contesting the merits of the petition.

II.

The provisions of the Anti Terrorism Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2);

*Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ. The state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . .
>
> A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

-6-

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, ---, 130 S. Ct. 1855, 1862 (2010); *see id*. at 1865 (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached"); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir.

2007); *King v. Bobby*, 433 F.3d 483, 489-90 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (*en banc*). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011).

A.

The petitioner first argues that the trial court erred when it refused to allow Officer Steven Rauser to testify that the petitioner stated when he was arrested that he was the victim of a robbery. Two possible constitutional claims emerge here: one is that the petitioner's rights under the Confrontation Clause were violated; and the second is that the petitioner was denied the right to present a defense. Both claims emanate from the Sixth Amendment.

The Michigan Court of Appeals determined that the trial court properly excluded the testimony, explaining:

> Defendant first argues that the trial court erroneously prevented defense counsel from eliciting, on cross-examination of a police officer, that at the time of defendant's arrest, defendant told the officer that he had been robbed. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.
>
> Defendant argues that his statement to the police officer was admissible as a prior consistent statement under MRE 801(d)(1)(B), and that the exclusion of the officer's testimony violated his constitutional right to present a defense and confront the witnesses against him. Although a defendant has a constitutional right to present a defense, in must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict. Here, the trial court did not preclude defendant from presenting a defense, or from confronting any witnesses, but only excluded defendant's pretrial statement as inadmissible hearsay.
>
> Hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible except as provided by the Michigan Rules of Evidence. Under MRE 801(d)(1)(B), a statement is not hearsay if the declarant testifies at the trial and is subject to cross-examination concerning the statement, and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Although defendant contends that the challenged testimony was admissible to rebut a claim that defendant's robbery story was fabricated, at the time the

-8-

> testimony was offered, defendant had not yet testified and there had been no claim that defendant fabricated a robbery story to explain his situation. Thus, there was no charge of fabrication to rebut, and nothing in the record for defendant's alleged statement to be consistent with. n.1 Because a foundation for admitting the testimony under MRE 801(d)(1)(B) had not been established, and because defendant's out-of-court statement otherwise qualified as inadmissible hearsay, the trial court did not abuse its discretion by excluding the testimony.
>
> Contrary to what defendant argues, the trial court did not preclude defendant from presenting his defense that he was a robbery victim. On the contrary, defendant was permitted to testify at length about several robberies and robbery attempts on him that night. He also was permitted to testify that when he was being arrested, he told a female officer that he had been robbed, and that he later told Sergeant Hughes at the police station that he had been robbed. We therefore reject this claim of error.
> _____
>
> n.1 The prosecutor waived opening statement and had not stated a theory at the time the witness testified.

*People v. Thompson*, 2009 WL 387735, at *1-2 (citations omitted).

The Court does not find unreasonable the state court's decision on this issue. The trial court excluded the petitioner's out-of-court statement on hearsay grounds, and that call was correct at the time the evidence was introduced. *See United States v. McDaniel*, 398 F.3d 540, 545-46 (6th Cir. 2005). That decision did not curtail any of the petitioner's clearly-established rights under the Sixth Amendment.

The Sixth Circuit has held consistently that although cross-examination is a necessary component to the preservation of an accused's rights under the Confrontation Clause, the right to cross-examine is not limitless. *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006). When a trial judge allows but limits cross-examination, "the key inquiry is 'whether the [fact finder] had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Id.* at 348 (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)). The pivotal point, according to the Sixth Circuit, is whether "the defense is not allowed to plac[e] before

the [fact finder] *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred." *Dorsey*, 872 F.2d at 167 (alteration and emphasis in original) (internal quotation marks omitted).

The petitioner here was allowed to cross-examine every witness brought against him, including Officer Rauser. At the time of that cross-examination, the trial judge had no reason to allow the petitioner to elicit from Officer Rauser evidence of the petitioner's own out-of-court statements. The evidentiary value of a prior consistent statement did not emerge until after the petitioner testified on his own behalf, and there is no suggestion that the petitioner attempted to recall Officer Rauser or that he would have been prohibited from doing so. Moreover, the petitioner testified as to what he said to Officer Rauser on that night.

Nor was the petitioner denied the opportunity to present his defense. The Compulsory Process Clause of the Sixth Amendment provides an accused with the right to "compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, a crucial part of the Constitution's more basic guarantee of "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). As applied to the states by the Due Process Clause of the Fourteenth Amendment, the accused has the right at trial to present testimony that is "relevant," "material," and "vital to the defense." *Washington v. Texas*, 388 U.S. 14, 16 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (internal citations omitted)). However, the "right to present relevant evidence is not unlimited" and "is subject to reasonable restrictions" imposed by the criminal process. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("As a result, state and federal rulemakers have broad

-10-

latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." (internal citations omitted)).

A violation of the fundamental right to present a defense is not established merely by showing that the trial court excluded evidence relevant to a defense. Rather, a petitioner must show that the exclusion of evidence "significantly undermined fundamental elements of the defendant's defense." *Scheffer*, 523 U.S. at 315. Put another way, the exclusion of evidence is unconstitutionally arbitrary or disproportionate "only where it has infringed upon a weighty interest of the accused." *Id*. at 308 (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)). Applying this standard in a habeas corpus case, the Sixth Circuit has held that the right to present a defense is abridged by an evidentiary ruling excluding defense evidence "[o]nly if 'an evidentiary ruling is so egregious that it results in denial of fundamental fairness.'" *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)); *accord Alley v. Bell*, 307 F.3d 380, 394-95 (6th Cir. 2002) (finding that exclusion of evidence unconstitutional only when it eviscerates a defense). Therefore, even if exclusion of evidence was erroneous under state law, the constitutional right to present a defense is not abridged unless the evidence was so material that it deprived the defendant of a fair trial. *Allen v. Howes*, 599 F. Supp. 2d 857, 872 (E.D. Mich.2009).

Here, the prosecutor did not suggest that the petitioner fabricated his story about being a robbery victim until her closing argument. When defense counsel asked Officer Rauser whether the petitioner had said he was the victim of a robbery, the foundation for admitting a prior consistent statement had not been established. Defense counsel did not even suggest that he was offering the

testimony for that purpose. The petitioner had not yet testified, nor was there any indication that he planned to testify. Moreover, there was no express or implied charge of recent fabrication or improper influence. When Officer Rauser testified, Lockhart had not yet testified that she heard a man shout that he was being robbed, and the prosecutor had not yet suggested that the petitioner would fabricate his defense to comport with her testimony. The trial court's ruling prohibiting the question was correct as a matter of state evidentiary law and it did not deprive the petitioner of a fair trial.

In addition, there is no evidence that Officer Rauser would have testified that the petitioner made a statement to him that was consistent with the petitioner's later in-court testimony. The petitioner testified that he told the female arresting officer, Jaquelinn Fernandez, that he had been robbed; he did not testify that Rauser heard the remark or that a similar remark was made to Rauser.

The petitioner has not shown that the trial court's exclusion of any evidence was unreasonable or arbitrary, or that it rendered his bench trial fundamentally unfair. Habeas relief is not warranted on this claim.

B.

In the petitioner's second claim, he contends that the evidence at trial was not sufficient to convict him of felony firearm. He does not challenge the quantum of proof. Rather, he contends that the Michigan Legislature did not intend for the crime of being a felon in possession of a firearm to be a predicate offense for felony firearm.

The Michigan Court of Appeals rejected that argument on state law grounds:

Defendant next argues that he was improperly convicted and sentenced for felony-firearm because the Legislature did not intend for felon in possession to be used as a predicate offense for a felony-firearm conviction. Although defendant concedes that this argument was squarely rejected in *People v. Calloway*, 469 Mich. 448, 452; 671 NW2d 733 (2003), and *People v. Dillard*, 246 Mich. App 163,

> 167-168; 631 NW2d 755 (2001), defendant argues that those decisions are no longer valid in light of our Supreme Court's more recent decision in *People v. Bobby Smith*, 478 Mich. 292; 733 NW2d 351 (2007). We disagree.
>
> In *Bobby Smith*, the Supreme Court adopted the same-elements test to determine whether convictions for two different offenses violate the double jeopardy protection against multiple punishments for the same offense. But the same-elements test is to be used only where the Legislature has not expressed a clear intent for multiple punishments. "Where the Legislature does clearly intend to impose such multiple punishments, imposition of such sentences does not violate the Constitution, regardless of whether the offenses share the same elements."
>
> In *Calloway*, the Supreme Court observed that the felony-firearm statute applies to all felonies, except the four felony offenses specifically enumerated in the statute. Accordingly, agreeing with this Court's decision in *Dillard*, the Court concluded that "[b]ecause the felon in possession charge is not one of the felony exceptions in the [felony-firearm] statute, it is clear that defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, MCL 750.224f, and felony-firearm, MCL 750.227b." Because the *Calloway* Court concluded that the felony-firearm statute clearly expresses the Legislature's intent to impose multiple punishments for separate convictions of felon in possession and felony-firearm, the same-elements test adopted in *Bobby Smith* does not apply. We therefore reject defendant's argument that he was improperly convicted and sentenced for both felon in possession of a firearm and felony-firearm.

*People v. Thompson*, 2009 WL 387735, at *2 (citations omitted).

It is plain here that the petitioner is challenging the state court's interpretation of state law. That issue is not one that a federal habeas court may second guess. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). A federal habeas court must defer to a state appellate court's determination of the statutory elements of state crimes. *Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). In *People v. Calloway*, 469 Mich. 448, 452, 671 N.W.2d 733, 735 (2003), the Michigan Supreme Court determined that the state legislature intended the felony firearm statute to apply to all felonies except the four felony offenses expressly enumerated in the statute. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546

U.S. 74, 76 (2005); *Sanford*, 288 F.3d at 860. Habeas relief is therefore not warranted on the petitioner's claim that the state court's interpretation of the state penal provisions at issue was incorrect.

C.

In the petitioner's third claim he argues that the trial court incorrectly scored the sentencing guidelines. He argues that points were improperly scored for placing multiple victims in danger and for interfering with the administration of justice because he fled from the police.

The petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not cognizable on federal habeas review because it is based solely on state law. *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, a claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is non-cognizable on habeas corpus review. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *see also Cook v. Stegall*, 56 F. Supp. 2d 788, 797-98 (E.D. Mich. 1999). This claim does not entitle the petitioner to habeas relief.

III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable interpretation of federal law, or an unreasonable determination of the facts of the case. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 15, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 15, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---